```
                                            FILED
                              CLERK, U.S. DISTRICT COURT

                                   MAR 1 6 2011

                              CENTRAL DISTRICT OF CALIFORNIA
                              BY                      DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

September 2010 Grand Jury

| UNITED STATES OF AMERICA, | ) | CR No. 11- 0217-ODW |
|---|---|---|
| Plaintiff, | ) | I N D I C T M E N T |
| v. | ) | [18 U.S.C. § 1343: Wire Fraud; 18 |
| STEVEN BOYLE YAMASHIRO, | ) | U.S.C. § 1957: Transactional Money Laundering; 18 U.S.C. § 2: Aiding and Abetting and Causing |
| Defendant. | ) | an Act to Be Done; 28 U.S.C. § 2461, 18 U.S.C. § 981(a)(1)(C), |
| | ) | and 21 U.S.C. § 853: Asset |
| | ) | Forfeiture; 18 U.S.C. § 982: |
| | ) | Asset Forfeiture] |

The Grand Jury charges:

COUNTS ONE THROUGH EIGHT

[18 U.S.C. § 1343]

A.   INTRODUCTION

1.   At all times relevant to this Indictment:

a.   Defendant STEVEN BOYLE YAMASHIRO ("defendant YAMASHIRO") was a resident of Pasadena, California, within the Central District of California.

b.   Defendant YAMASHIRO passed Series 7, Series 24, Series 63, and Series 65 securities examinations administered by the Financial Industry Regulatory Authority ("FINRA").

SYM:sym

EXHIBIT A

1 | FINRA is the largest, independent regulator for all securities
2 | firms doing business in the United States.

3 |         (i)    A Series 7 examination is a General
4 | Securities Representative Examination that allows an individual
5 | to become a Registered Representative of a broker-dealer and to
6 | communicate with retail investors.

7 |         (ii)   A Series 24 examination is a General
8 | Securities Principal Examination that allows an individual to
9 | manage or supervise branch activities of a broker-dealer.

10 |        (iii) A Series 63 examination is a Uniform
11 | Securities Agent State Law Examination that allows an
12 | individual to qualify as a securities agent within a particular
13 | state.

14 |         (iv)   A Series 65 examination is a Uniform
15 | Investment Adviser Law Examination that allows an individual to
16 | qualify as an investment adviser representative.  An investment
17 | adviser has a fiduciary duty to his clients to hold the
18 | client's interest above his own in all matters.

19 |        c.    Defendant YAMASHIRO incorporated Yamashiro
20 | Financial Services, dba Capital Analyst ("Capital Analyst"), in
21 | the State of California in April 1995.  Defendant YAMASHIRO
22 | operated Capital Analyst out of 201 South Lake Avenue, Unit
23 | 301, Pasadena, California.  Defendant YAMASHIRO was the Chief
24 | Executive Officer, Secretary, Chief Financial Officer, and
25 | Director of Capital Analyst.  Capital Analyst was registered as
26 | an Investment Adviser Firm with the Securities and Exchange
27 | Commission ("SEC").  Defendant YAMASHIRO was registered as a
28 |

1   Registered Investment Adviser with the State of California from
2   in or about January 2002 through in or about December 2006.

3         d.    To buy and sell securities on a client's behalf,
4   an individual must be registered with a broker-dealer
5   registered with the SEC.  From in or about November 2002
6   through in or about February 2006, defendant YAMASHIRO was
7   registered with Cambridge Investment Research, Incorporated
8   ("Cambridge"), a registered broker-dealer.  After February
9   2006, defendant YAMASHIRO could not buy and sell securities on
10  behalf of clients because he was not registered with a broker-
11  dealer.

12        e.    Asatsuyu was incorporated in the State of
13  California in May 2002 and operated out of 201 South Lake
14  Avenue, Unit 301, Pasadena, California.  Asatsuyu purported to
15  provide consulting services.  S.L.Y., defendant YAMASHIRO's
16  wife, was the Chief Executive Officer, Secretary, Chief
17  Financial Officer, and Director of Asatsuyu.

18        f.    Sunshine State Shuttle, LLC ("Sunshine State")
19  was organized under the laws of the State of Florida in
20  November 2005 and operated out of 201 South Lake Avenue, Unit
21  301, Pasadena, California.  Sunshine State purported to offer a
22  ferry service to transport customers from land to a casino boat
23  owned by companies controlled by defendant YAMASHIRO.
24  Defendant YAMASHIRO was the managing member of Sunshine State.

25

26

27

28

3

B.     THE SCHEME TO DEFRAUD

2.     Beginning on a date unknown but no later than in or about December 2005, and continuing through in or about December 2007, within the Central District of California, and elsewhere, defendant YAMASHIRO, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victim clients as to material matters, and to obtain money and property from victim clients by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

3.     The scheme to defraud was carried out, in substance, in the following manner:

a.     As a Registered Investment Adviser, defendant YAMASHIRO provided investment advice to individuals and managed their investment portfolios through Cambridge and Capital Analyst.

b.     Defendant YAMASHIRO encouraged, directed, and caused victim clients to place their money in investments that defendant YAMASHIRO falsely described as certificates of deposits, mutual funds, real estate investment trusts, stocks, and bonds, after purporting to consider each client's particular investment strategies, goals, and needs.  Many of his clients liquidated their Individual Retirement Accounts ("IRA") to invest as recommended by defendant YAMASHIRO.  In recommending these particular investments, defendant YAMASHIRO

4

1   made one or more of the following materially false and
2   misleading representations and promises, among others:

3               (i)   the investment was insured;

4               (ii)  the investment was 100% guaranteed;

5               (iii) the investment would earn a 7-9% return on
6   investment; and

7               (iv)  the investment was liquid and could be
8   cashed out at any time.

9       c.   In truth and in fact, as defendant YAMASHIRO
10  then well knew:

11              (i)   the investment was not insured;

12              (ii)  the investment was not 100% guaranteed;

13              (iii) the clients did not earn any real returns
14  on investments, but were merely paid, if anything, their own
15  money or that of other clients; and

16              (iv)  the clients could not cash out their
17  investment at any time.

18      d.   To further the fraudulent scheme, defendant
19  YAMASHIRO concealed from his clients the following material
20  facts, among others, which facts he then well knew:

21              (i)   Defendant YAMASHIRO and his wife, S.L.Y.,
22  controlled the companies, Asatsuyu and Sunshine State, in which
23  some clients' monies were supposedly being invested;

24              (ii)  Defendant YAMASHIRO used victim clients'
25  monies in part to make purported interest and principal
26  payments to other clients ("Ponzi payments");

27
28

                                                      5

1    (iii) Defendant YAMASHIRO used victim clients'
2 monies in part for his business expenses relating to the
3 operation of two casino boats located in Florida; and
4    (iv)  Defendant YAMASHIRO used victim clients'
5 monies in part for his own personal use to pay for the mortgage
6 on his house in Alhambra, California, and to purchase a
7 condominium in Florida.

8    e.    In order to lull the victim clients into a false
9 sense of security that their funds were secure and not at risk,
10 and to prevent the victim clients from complaining to federal
11 or state authorities or bringing a lawsuit against him,
12 defendant YAMASHIRO sent fraudulent account statements to the
13 victim clients; gave promissory notes to the victim clients;
14 sent settlement and release documents to the victim clients;
15 and made various false representations to the victim clients to
16 explain why they had not received their initial investments
17 back and returns on those investments, including that the
18 monies were tied up in real estate, the real estate sale was in
19 escrow, the transfer of monies was in process, the bond company
20 was causing the delay, and Asatsuyu did not have any cash.

21    5.    Between in or about February 2005, and in or about
22 December 2007, pursuant to the fraudulent scheme described
23 above, defendant YAMASHIRO received over $3.5 million into
24 accounts controlled by defendant YAMASHIRO and his wife, S.L.Y.
25 C.   USE OF THE WIRES
26    6.    On or about the dates set forth below, in Los Angeles
27 County, within the Central District of California, and
28

6

1  elsewhere, defendant YAMASHIRO, for the purpose of executing

2  the above-described scheme to defraud, transmitted, caused the

3  transmission of, and aided and abetted the transmission of, the

4  following items by means of wire and radio communication in

5  interstate and foreign commerce:

| COUNT | DATE | WIRE |
|---|---|---|
| ONE | 3/27/06 | Facsimile from defendant YAMASHIRO in Pasadena, California, to Trust Company of America in Colorado, requesting withdrawal of $44,000 from the Individual Retirement Account ("IRA") of S.C. |
| TWO | 4/3/06 | Facsimile from defendant YAMASHIRO in Pasadena, California, to Trust Company of America in Colorado, requesting withdrawal of $10,000 from the IRA of S.C. |
| THREE | 4/3/06 | Facsimile from defendant YAMASHIRO in Pasadena, California, to Trust Company of America in Colorado, requesting withdrawal of $45,000 from the IRA of B.M. |
| FOUR | 4/4/06 | Facsimile from defendant YAMASHIRO in Ventura County, California, to Trust Company of America in Colorado, requesting withdrawal of $48,000 from the IRA of R.P. |
| FIVE | 4/13/06 | Wire transfer of $90,000 from National Financial Services account at JPMorgan Chase to Asatsuyu account at Bank of America in California, through the Fedwire Funds Transfer System in New Jersey, per request from Pasadena, California, for the benefit of B.K. and C.K. |
| SIX | 5/24/06 | Facsimile from defendant YAMASHIRO in Ventura County, California, to Trust Company of America in Colorado, requesting wire transfer of $268,000 from account of M.F. Trust to Sunshine State Shuttle |

7

| COUNT | DATE | WIRE |
|-------|------|------|
| SEVEN | 6/14/06 | Facsimile from Capital Analyst in Pasadena, California, to Trust Company of America in Colorado, requesting withdrawal of $17,000 from the IRA of B.M. |
| EIGHT | 12/10/07 | Telephone call from B&G House of Printing in Gardena, California, to (305) 974-0651 in Florida |

///

///

///

8

COUNTS NINE AND TEN

[18 U.S.C. §§ 1957, 2]

7.    The Grand Jury hereby repeats and realleges paragraphs 1 through 6 of this Indictment as if fully set forth herein.

8.    On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant YAMASHIRO, knowing that the funds involved represented the proceeds of some form of unlawful activity, conducted and willfully caused others to conduct the following monetary transactions in criminally derived property of a value greater than $10,000, which property, in fact, was derived from specified unlawful activity, namely wire fraud, in violation of Title 18, United States Code, Section 1343.

| COUNT | DATE | MONETARY TRANSACTION |
|-------|------|----------------------|
| NINE | 4/6/06 | Wire Transfer of $40,000 from Sunshine State Shuttle account at Bank of America to Anemos Maritime Services account at Wachovia Bank |
| TEN | 5/25/06 | Deposit of Check No. 1031 issued to Ocean's 21 from account of Sunshine State Shuttle LLC at Bank of America in the amount of $260,000 |

///

///

///

9

FORFEITURE ALLEGATION

(WIRE FRAUD)

[28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C);

and 21 U.S.C. § 853]

9.    Pursuant to Title 28, United States Code, Section 2461(c), Title 18, United States Code, Section 981(a)(1)(C), and Title 21, United States Code, Section 853, if defendant YAMASHIRO is convicted of any of the offenses charged in Counts One through Eight of this Indictment, he shall forfeit to the United States the following property:

a.    All right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses;

b.    A sum of money equal to the total amount of proceeds derived from each such offense for which defendant YAMASHIRO is convicted, which amount is alleged to be at least $3.5 million.

10.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant YAMASHIRO if so convicted shall forfeit substitute property, up to the total value of the property described in paragraph 9(b), if, by any act or omission of defendant YAMASHIRO, the property described in paragraph 9(a), or any portion thereof, (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

1   substantially diminished in value; or (e) has been commingled
2   with other property that cannot be divided without difficulty.
3   ///
4   ///
5   ///
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FORFEITURE ALLEGATION

(MONEY LAUNDERING)

[18 U.S.C. § 982]

11. Pursuant to Title 18, United States Code, Section 982(a)(1), if defendant YAMASHIRO is convicted of the offenses set forth in Counts Nine and Ten of this Indictment, he shall forfeit to the United States the following property:

a. All right, title, and interest in any and all property involved in each such offense or conspiracy to commit such offense, for which defendant YAMASHIRO is convicted, and all property traceable to such offense, including the following:

(1) all money or other property that was the subject of each transaction, transportation, transmission, or transfer in violation of Title 18, United States Code, Section 1957;

(2) all commissions, fees, and other property constituting proceeds obtained as a result of those violations; and

(3) all property used in any manner or part to commit or to facilitate the commission of those violations.

b. A sum of money equal to the total amount of money involved in each offense, or conspiracy to commit such offense, for which defendant YAMASHIRO is convicted.

12. Pursuant to Title 21, United States Code, Section

12

853(p), as incorporated by Title 18, United States Code,
Section 982(b), defendant YAMASHIRO shall forfeit substitute
property, up to the value of the amount described in paragraph
11, if, by any act or omission of defendant YAMASHIRO, the
property described in paragraph 11, or any portion thereof,
cannot be located upon the exercise of due diligence; has been
transferred, sold to, or deposited with a third party; has been
placed beyond the jurisdiction of this court; has been
substantially diminished in value; or has been commingled with
other property that cannot be divided without difficulty.


                    A TRUE BILL


                    ___/s/_____
                    Foreperson

ANDRÉ BIROTTE JR.
United States Attorney


ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division


BEONG-SOO KIM
Assistant United States Attorney
Chief, Major Frauds Section


STEPHANIE YONEKURA McCAFFREY
Executive Assistant United States Attorney


                    13